COMMUNITY ACADEMY OF PHILADELPHIA CHARTER SCHOOL, Petitioner

v.

PHILADELPHIA SCHOOL DISTRICT SCHOOL REFORM COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2013.

Decided March 8, 2013.

George A. Bochetto, Philadelphia, for petitioner.

Richard L. Bazelon, Philadelphia, for respondent.

BEFORE: BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

Petitioner Community Academy of Philadelphia Charter School (the Academy) petitions for review of an order of the Charter School Appeal Board (CAB), which dismissed its appeal for lack of jurisdiction.[1] We now affirm.

This case raises the question of whether CAB has jurisdiction to hear an appeal by a charter school concerning an application for renewal of its charter when a *majority vote of a quorum* of the Philadelphia School District School Reform Commission (SRC)[2] voted to renew the charter, but SRC takes the position that the vote resulted in no action being taken and that the application remains under consideration because the vote did not constitute *a majority vote of the five-member board* of SRC.

The Academy operates as a charter school pursuant to a charter issued in 1997, renewed in 2001, and again renewed on February 15, 2006. By its terms, the renewed charter was set to expire on June 30, 2011. Prior to the expiration of the charter, the Academy filed with SRC an application to renew its charter.

On February 16, 2011, a quorum of SRC's board, consisting of three commissioners, voted on a resolution to grant renewal of the charter with certain enumerated conditions that were recommended by the Philadelphia School District's Office of Charter Schools. The commissioners voted 2:1 in favor of renewal with conditions. With regard to the two other commission seats, one commissioner abstained and one SRC seat was vacant due to a resignation. SRC took the position that the February 16, 2011 vote did not constitute an action in favor of renew-

---

1. The Academy filed a dual jurisdiction petition for review with the Court, seeking review of CAB's order in our appellate jurisdiction (Count I) and also seeking relief in the Court's original jurisdiction (Count 2). The appellate portion of the action is now before the Court for disposition. By order dated August 20, 2012, the Court bifurcated the matter and stayed the transfer of the original jurisdiction count until final disposition of the appellate count of the petition for review.

2. Section 696 of the Public School Code of 1949 (the Public School Code), Act of March 10, P.L. 30, added by the Act of April 27, 1998, P.L. 270, *as amended*, 24 P.S. § 6–696,

addresses school reform commissions. Section 696(a) of the Public School Code, 24 P.S. § 6–696(a), provides that "[w]ithin thirty (30) days of a declaration by the Secretary of Education that a school district of the first class is distressed . . ., a School Reform Commission shall be established consisting of four members initially appointed by the Governor and one member initially appointed by the mayor of the city coterminous with the school district." Furthermore, "[t]he School Reform Commission shall be an instrumentality of a school district of the first class, exercising the powers of the board of school directors." Section 696(a) of the Public School Code.

al, because it contended that a majority vote of all five available commission positions—*i.e.*, three votes in favor of renewal—was required in order to renew the charter. The Academy, however, disagreed with SRC's interpretation of the law and took the position that only a majority vote of a quorum was required in order to renew a charter.

On April 27, 2011, SRC voted on the same resolution a second time, again resulting in a 2:1 vote in favor of renewal. SRC continued to maintain that the vote did not constitute a renewal because less than three members voted in favor of renewal. By letter dated May 13, 2011, SRC informed the Academy that the Academy would not be closed in September, regardless of whether SRC renewed the charter in June. (R.R. at 8a–9a.) Furthermore, SRC informed the Academy that SRC anticipates that the Academy would remain in operation through any appeals that may result. (*Id.*)

On June 3, 2011, the Academy filed an appeal with CAB, arguing, in part, that CAB has jurisdiction to determine whether the Academy's renewal application should be granted based upon SRC's failure to renew or deny its charter by June 30, 2011.[3] The Academy requested that CAB enter an order directing SRC to renew the Academy's charter in light of the 2:1 vote in favor of renewal. SRC filed a motion to quash, arguing that CAB lacked jurisdiction to consider the appeal. SRC argued that CAB did not have jurisdiction over the Academy's appeal, because CAB's jurisdiction in a charter renewal case is statutorily limited to denials or revocations of charters, and SRC neither denied nor revoked the Academy's charter. Rather, SRC did not act on the application for renewal. The Academy countered by arguing that SRC's characterization of its vote as a "non-action" is the equivalent of SRC not renewing its charter.[4]

By order dated July 12, 2012, CAB dismissed the appeal for lack of jurisdiction. In dismissing the appeal, CAB noted that, pursuant to Section 1729–A(d) of the Charter School Law,[5] its jurisdiction is limited to the exclusive review of a decision to not renew or to revoke a charter in cases of an existing charter school. CAB explained:

CAB does not have jurisdiction to review ... SRC's vote because it was not a decision to not renew or revoke [the Academy's] charter. On the contrary, ... SRC voted on a motion to renew the school's charter. Moreover, the parties' dispute here is over the legal effect of a 2–1 vote of the 5–member SRC. CAB lacks jurisdiction over such a dispute. Also, CAB cannot order ... SRC to renew [the Academy's] charter because CAB, as an administrative appellate body, does not have injunctive powers

---

3. The Academy filed the appeal on June 3, 2011, because the Academy ascertained that, as of that date, SRC could not conduct a nonrenewal hearing and provide a thirty-day period of time for public comment prior to the expiration of its charter on June 30, 2011, as required by Section 1729–A(c) of the Charter School Law, Act of March 10, 1949, P.L. 30, added by the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17–1729–A(c). Thereafter, however, SRC confirmed that the Academy would remain in operation through the pendency of the proceedings.

4. SRC also sought to quash the appeal on the basis of timeliness, because the Academy did not appeal within thirty days of SRC's April 2011 vote. The Academy countered that the appeal was timely, because CAB failed to promulgate any rules related to the time for taking an appeal from nonrenewal or revocation decisions. Ultimately, CAB did not rule on the issue of timeliness.

5. Act of March 10, 1949, P.L. 30, added by the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17–1729–A(d).

under law. Because ... SRC has determined that its votes were of no effect, CAB takes the position that [the Academy's] renewal application remains pending before ... SRC until ... SRC acts upon the application by either approving or denying it.

(CAB's Opinion and Order at 3.)

■ On appeal to this Court, the Academy essentially argues that CAB erred in concluding that it lacked jurisdiction over the appeal filed by the Academy. More specifically, the Academy argues that: (1) CAB erred in concluding that it lacked jurisdiction over the Academy's appeal of SRC's failure to timely act on the application to renew its charter, which resulted in the lapse of the charter without a notice of renewal or nonrenewal; (2) CAB erred in concluding that it lacked jurisdiction to determine the legal effect of a 2:1 vote of SRC in favor of the Academy's renewal application; (3) CAB erred in concluding that it lacked the authority to order SRC to renew the Academy's charter upon the finding that the SRC's votes constituted approval of the charter school's renewal application; and (4) substantial evidence of record does not exist to support CAB's finding that the Academy's charter renewal application remains pending before SRC.

In support of its jurisdictional arguments, the Academy points to our opinion in *Northside Urban Pathways Charter School v. State Charter School Appeal Board (Pittsburgh Public School District)*, 56 A.3d 80 (Pa.Cmwlth.2012), for the proposition that CAB has "implied authority" to review charter issues not expressly set out in the Charter School Law.[6] The Academy contends that this "implied authority" includes the authority to consider an appeal from a school district's failure to act on a charter renewal application, because CAB cannot fulfill its mandate to oversee the opening and closing of charter schools without exercising jurisdiction over an appeal from a so-called "non-decision" that allows a charter to lapse without either a renewal or notice of nonrenewal. Alternatively, if *Northside Urban Pathways* is not dispositive, the Academy argues that we should still conclude that CAB has jurisdiction based on SRC's failure to decide the renewal application prior to the expiration of the term of the charter. The Academy contends that under either approach, nonrenewal under the circumstances present in this case implicates both public policy and due process issues.

The Academy also argues that CAB erred in concluding that it did not have jurisdiction to determine the "legal effect" of a 2:1 vote of SRC *in favor* of a charter renewal application. The Academy contends that a school district's decision that a 2:1 vote constitutes a non-decision that allows a charter to lapse is indistinguishable from a decision to revoke or to not renew a charter, which is appealable to CAB. The Academy further contends that CAB cannot fulfill its mandate to review decisions involving the closing of a charter school if it does not have the authority to review the district's decision as to the "legal effect" of its vote on the charter's renewal application. Moreover, the Academy maintains that SRC incorrectly relied upon Section 1717–A of the Charter School Law, 24 P.S. § 17–1717–A, when concluding that its 2:1 vote constituted a "non-decision." On the contrary, according to the Academy, the appropriate section is Section 1729–A of the Charter School Law.

6. Act of March 10, 1949, P.L. 30, added by the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1701–A to 17–1751–A.

In response, SRC maintains that it did not reach a final decision concerning the application for renewal filed by the Academy, and, therefore, CAB lacked jurisdiction and the matter remained pending before SRC. SRC takes the position that a charter cannot be non-renewed unless and until SRC complies with the standards for nonrenewal and meeting notice requirements and conducts a public hearing as required by Section 1729–A(c) of the Charter School Law. SRC recognizes that the Academy would have a right to appeal any nonrenewal, during which time "the charter remains in effect." Section 1729–A(f) of the Charter School Law.

SRC posits that the concept of "implied jurisdiction" is inapplicable to the situation at hand, because SRC's inaction on the Academy's application for renewal does not affect the Academy's continued operation. SRC distinguishes this case from the situation in *Northside Urban Pathways*, where we concluded that CAB has implied authority to act on an application to amend a charter, because otherwise CAB would *never* have an opportunity to review a denial of an application to amend a charter. Here, CAB will have the opportunity to review the matter if SRC ultimately does not renew the Academy's charter.

With those arguments in mind, we now turn to the statutory framework set forth in the Public School Code. The Charter School Law provides that a "charter shall be for a period of no less than three (3) nor more than five (5) years and may be renewed for five (5) year periods upon reauthorization by the local board of school directors of a school district or the appeal board." Section 1720–A of the Charter School Law, 24 P.S. § 17–1720–A. Pursuant to the Public School Code, the "School Reform Commission shall be responsible for the operation, management and educational program of the school district of the first class," and "[t]he powers and duties of the board of school directors of a school district of the first class shall be suspended." [7] Section 696(e)(1) of the Public School Code, 24 P.S. § 6–696(e)(1). All powers and duties that were previously granted to the board of school directors are vested in the School Reform Commission, *id.*, including the ability to "suspend or revoke a charter pursuant to [S]ection 1729–A [of the Charter School Law]," Section 696(*i*) (2)(ii) of the Public School Code, 24 P.S. § 6–696(*i*)(2)(ii). The Public School Code also specifically provides that "[a]ctions of the School Reform Commission shall be by a majority vote," and that "[a] majority of the commission members appointed shall constitute a quorum." [8]

Section 1729–A(d) of the Charter School Law, provides CAB with exclusive jurisdiction over a school district's decision to revoke or to not renew a charter.[9] This

7. The Public School Code specifically authorizes the School Reform Commission, among other powers, "[t]o enter into agreements with persons or for-profit or nonprofit organizations to operate one or more schools." Section 696(*i*)(2) of the Public School Code, 24 P.S. § 6–696(*i*)(2). It also provides that "[a]ll applications to operate a charter school in a school year after a declaration of distress is issued and all charter schools established after a declaration of distress is issued shall not be subject to sections 1717–A(b), (c), (d), (e), (f), (g), (h) and (i), 1722–A(c) and 1724–A

[of the Charter School Law]." Section 696(*i*)(2)(i), 24 P.S. § 6–696(*i*)(2)(i).

8. Section 696(b.1) of the Public School Code, 24 P.S. § 6–696(b.1).

9. Section 1729–A of the Charter School Law, 24 P.S. § 17–1729–A (causes for nonrenewal or termination), provides, in pertinent part, as follows:

(a) During the term of the charter or at the end of the term of the charter, the local board of school directors may choose to

Court's recent en banc decision in *Northside Urban Pathways* provides some guidance regarding the statutory construction of the Charter School Law as it relates to CAB's jurisdiction. In *Northside Urban Pathways,* we wrote:

> The jurisdiction of an administrative agency relates to the competence of that body to determine controversies of the general class to which the case presented for its consideration belongs. *Riedel v. Human Relations Commission of Reading,* 559 Pa. 34, 39, 739 A.2d 121, 124 (1999). An administrative agency's authority is limited to the powers granted by legislative enactment. *Mack v. Civil Service Commission,* 817 A.2d 571, 574 (Pa.Cmwlth.2003). However, Pennsylvania courts have recognized that "the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to the effectuation of its express mandates." *Commonwealth v. Beam,* 567 Pa. 492, 496, 788 A.2d 357, 360 (2002). Thus, although the jurisdiction and power of administrative agencies are strictly construed, appellate courts "recognize that the General Assembly has prescribed that legislative enactments are generally to be construed in such a manner as to effect [sic] their objects and promote justice ... and, in assessing a statute, courts are directed to consider the consequences of a particular interpretation...." *Id.* at 495, 788 A.2d at 359. Stated another way, "statutory construction is not an exercise to be undertaken without considerations of practicality, precept and experience, as ignoring such considerations may result in a forced and narrow interpretation

---

revoke or not to renew the charter based on any of the following:

....

(c) *Any notice of revocation or nonrenewal of a charter given by the local board of school directors of a school district shall state the grounds for such action with reasonable specificity and give reasonable notice to the governing board of the charter school of the date on which a public hearing concerning the revocation or nonrenewal will be held. The local board of school directors shall conduct such hearing, present evidence in support of the grounds for revocation or nonrenewal stated in its notice and give the charter school reasonable opportunity to offer testimony before taking final action.* Formal action revoking or not renewing a charter shall be taken by the local board of school directors at a public meeting pursuant ... the "Sunshine Act," [now 65 Pa.C.S. §§ 701–706,] after the public has had thirty (30) days to provide comments to the board. All proceedings of the local board pursuant to this subsection shall be subject to 2 Pa.C.S. Ch. 5 Subch. B (relating to practice and procedure of local agencies). Except as provided in subsection (d), the decision of the local board shall not be subject to 2 Pa.C.S. Ch. 7 Subch. B (relating to judicial review of local agency action).

(d) Following the appointment and confirmation of the appeal board, but not before July 1, 1999, the charter school may appeal the decision of the local board of school directors to revoke or not renew the charter to the appeal board. *The appeal board shall have the exclusive review of a decision not to renew or revoke a charter.* The appeal board shall review the record and shall have the discretion to supplement the record if the supplemental information was previously unavailable. .... The appeal board shall give due consideration to the findings of the local board of directors and specifically articulate its reasons for agreeing or disagreeing with those findings in its written decision.

(e) If the appeal board determines that the charter should not be revoked or should be renewed, the appeal board shall order the local board of directors to rescind its revocation or nonrenewal decision.

(f) Except as provided in subsection (g), the charter shall remain in effect until final disposition by the appeal board.

...

(Emphasis added.)

that does not comport with legislative intent." *Id.* at 495–96, 788 A.2d at 359–60 (quoting *Department of Environmental Resources v. Butler County Mushroom Farm,* 499 Pa. 509, 516–17, 454 A.2d 1, 5–6 (1982)).

*Northside Urban Pathways,* 56 A.3d at 83.

As to the grant of a charter and a charter school's continuing interest in the charter, we explained:

> This Court has held that a charter is a government license, not a contract. *Foreman v. Chester–Upland School District,* 941 A.2d 108 (Pa.Cmwlth.2008).[ ] A school district is obligated to issue a charter if the applicant satisfies the criteria in the Charter School Law and, once issued, the charter school has a protected property interest in its charter. *See, e.g., Philadelphia Entertainment and Development Partners L.P. v. Pennsylvania Gaming Control Board,* 34 A.3d 261, 276 (Pa.Cmwlth.2011) (noting that "[g]overnment licenses to engage in a business or occupation create an entitlement to partake of a profitable activity, and, therefore, are property rights.") (citation omitted). Any adverse governmental decision with respect to a license—here, the denial of an amendment to a charter—must be subject to review, under due process and the Pennsylvania Constitution. *See id.* at 276 (noting that "some form of due process is required when an administrative agency revokes one's right to transact business in the Commonwealth.").

*Northside Urban Pathways,* 56 A.3d at 84 (footnote omitted).

Noting that the Charter School Law is part of the Public School Code,[10] in *Northside Urban Pathways* we considered our Supreme Court's decision in *Burger v. Board of School Directors of McGuffey*

*School District,* 576 Pa. 574, 839 A.2d 1055 (2003), regarding the scope of a school district's implied authority under the Public School Code. We interpreted the decision in *Burger* as supporting a conclusion that a school district has implied authority to consider and act upon a charter amendment proposed by a charter school and that CAB's jurisdiction, therefore, must include jurisdiction to hear appeals of adverse decisions on proposed charter amendments. We explained:

> the Supreme Court's implied authority analysis in *Burger* is applicable to the CAB, which is also a creature of the [Public] School Code by virtue of its enabling provision at Section 1721–A of the Charter School Law, 24 P.S. § 17–1721–A. The Charter School Law expressly vests the CAB with jurisdiction over every significant decision involving a charter school. The CAB has exclusive jurisdiction over appeals by applicants from the denial of their initial applications for a charter. Section 1717–A (i)(1) of the Charter School Law, 24 P.S. § 17–1717–A(i)(1). The CAB has jurisdiction to directly review and render a decision on a charter application where a school district fails to do so. Section 1717–A (g) of the Charter School Law, 24 P.S. § 17–1717–A (g). The CAB has exclusive jurisdiction over an appeal of a school district's decision to revoke or not renew a charter. Section 1729–A(d) of the Charter School Law, 24 P.S. § 17–1729–A(d). Finally, Section 1721–A(b) of the Charter School Law provides that the CAB "shall meet as needed to fulfill the purposes provided in this subsection." 24 P.S. § 17–1721–A(b).

> By necessary implication, the Board's authority to perform the above enumerated functions includes jurisdiction to

**10.** Act of March 10, 1949, P.L. 30, *as amend-* ed, 24 P.S. §§ 1–10127–2702.

·hear appeals of adverse decisions on proposed charter amendments. In so holding, we are cognizant of .our prior observation that "local school boards have a significant interest in whether charters are granted; indeed the legislative history contains frequent references to the bias of local school boards against charter schools." *West Chester Area School District v. Collegium Charter School,* 760 A.2d 452, 461 (Pa.Cmwlth. 2000). The legislature dealt with this inherent bias by ensuring that the CAB has jurisdiction to review every significant decision that could be made by a school district with respect to a charter school. Without the oversight of the CAB, school districts could restrict the creation and growth of charter schools, thereby defeating the legislative intent of providing parents and students with expanded choices in public education.

*Northside Urban Pathways,* 56 A.3d at 85–86 (footnotes omitted).

With the above framework ·in mind, in order to determine whether CAB has jurisdiction over the Academy's appeal, we first must determine whether SRC's actions constituted the equivalent of a nonrenewal, as suggested by the Academy, such that CAB's implied authority would result in CAB having jurisdiction over the appeal. Of significance to . our · analysis is our Court's prior decisions in *Foreman v. Chester–Upland School District,* 941 A.2d 108 (Pa.Cmwlth.2008), and, thereafter, *Northside Urban Pathways,* wherein we recognized that a charter school has a protected property interest in its continuing charter. *Northside Urban Pathways,* 56 A.3d at 84; *Foreman,* 941 A.2d at 115. This protected property interest is borne out by the protections contained in Section 1729–A (c) of the Charter School Law, which requires that if a school board intends not to renew a charter, it must provide a notice of nonrenewal of the charter.

The school board also shall conduct a hearing, "present evidence in support of the grounds for revocation or nonrenewal stated in its notice and give the charter school reasonable opportunity to offer testimony before taking final action." Section 1729–A(c) of the Charter School Law. That section further provides that formal action not renewing a charter shall be taken by the school board at a public meeting pursuant to the Sunshine Act, 65 Pa.C.S. §§ 701–706, after the public has had thirty days to provide comments to the school board. *Id.* Moreover, Section 1729–A(f) of the Charter School Law makes clear that, except where there is a risk to health or safety, a "charter shall remain in effect until final disposition by [CAB.]" To allow a charter to lapse due to the failure of a school district to fully act on an application before the expiration of the charter would run afoul of this Court's recognition of a charter school's protected property interest in its charter and would thwart the protections afforded to the charter school by virtue of Sections 1729–A(c) and (f) of the Charter School Law. Thus, in order for a charter school's charter to be non-renewed, a school board must issue a notice of nonrenewal, conduct a hearing, and provide the public with a thirty day time period to provide comments before it issues a formal determination of the matter. *See* Section 1729(c) of the Charter School Law. Even then, the charter remains in effect until a final disposition of an appeal, if taken. *See* Section 1729(f) of the Charter School Law.

■ Thus, in the absence of formal action renewing or non-renewing the charter (*i.e.,* signing the renewed charter or issuing a final determination of nonrenewal), we must conclude that an application to renew remains pending until a renewed charter is signed or a final determination of nonrenewal issued without any effect on

the continued operation of the charter school. In other words, until a final determination is issued regarding an application to renew, the charter school may continue to function as if its charter were still in effect, because no formal action to non-renew has been completed.

In the matter now before the Court, although the Academy filed an application for renewal of its charter well in advance of the expiration of its charter, SRC never informed the Academy that it had reached a final decision to not renew its charter. SRC also did not issue a notice of nonrenewal or follow the other provisions required to non-renew a charter as set forth in Section 1729–A(c) of the Charter School Law. Moreover, we note the obvious—that SRC similarly did not inform the Academy that it had reached a final decision to renew its charter, nor did it sign a renewed charter prior to the expiration of its charter. Under these circumstances, therefore, we must agree with SRC that no final decision has been issued and that the matter remains pending before SRC. As a result, CAB appropriately determined that it lacked jurisdiction to consider the matter, because its jurisdiction is limited to "review of a decision not to renew or revoke a charter." Section 1729–A(d) of the Charter School Law.[11]

Accordingly, we must affirm the order of CAB.[12]

**11.** Because we have concluded that CAB lacked jurisdiction over the appeal for the reasons set forth above, we need not consider whether CAB erred in concluding that it lacked the authority to order SRC to renew a charter school's charter upon the finding that SRC's votes constituted approval of the charter school's renewal application. We also need not address the question of whether substantial evidence of record exists to support a finding that the charter did not lapse, because the effect of non-action on the charter is a legal question.

*ORDER*

AND NOW, this 8th day of March, 2013, the order of the Charter School Appeal Board, dismissing Petitioner's appeal based on lack of jurisdiction, is hereby AFFIRMED. Pursuant to this Court's earlier order dated August 20, 2012, the Chief Clerk is directed to transfer Count II of Petitioner's petition for review to the Court of Common Pleas of Philadelphia County.

Nothing in our decision precludes the Academy from raising (in another action or in a future appeal of a subsequent decision not to renew its charter) the issue of whether SRC's 2:1 votes in favor of renewal resulted in the charter being renewed, such that any subsequent action to not renew was improper and ineffective, and we offer no opinion as to the merits of that issue.

**12.** Pursuant to the Court's prior order of August 20, 2012, the remaining original jurisdiction count will be transferred to the Court of Common Pleas of Philadelphia County.