92 A.3d 746

The SCHOOL DISTRICT OF PHILADELPHIA, Appellant

v.

DEPARTMENT OF EDUCATION, Appellee.

The Walter D. Palmer Leadership Learning
Partners Charter School, Intervenor.

Supreme Court of Pennsylvania.

Argued March 11, 2014.

Decided May 27, 2014.

David Bradford Lapp, Esq., Education Law Canter (PA), for Education Law Center.

Michael Elmer Peters, Esq., Michael Joseph Savona, Esq., Jenkintown, Eastburn and Gray, P.C., for Chester Community Charter School.

Matthew Hermann Haverstick, Esq., Mark Edward Seiberling, Esq., Conrad O'Brien PC, Philadelphia, for Walter D. Palmer Leadership Learning Partners Charter School.

Paul Joseph Cianci, Esq., Philadelphia, Michael Ira Levin, Esq., Huntingdon Valley, Levin Legal Group, P.C., Joseph John Langkamer, Esq., Carl A. Solano, Esq., Deena Jo Schneider, Esq., Schnader Harrison Segal & Lewis, L.L.P., Philadelphia, for School District of Philadelphia.

Katherine Marie Fitz Patrick, Esq., for PA School Boards Association & The School District of Pittsburgh.

Joseph M. Miller, Esq., Philadelphia, for Department of Education.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, STEVENS, JJ.

## *OPINION*

McCAFFERY, Justice.

In this matter, we interpret a provision of the Charter School Law [1] that addresses the validity of an enrollment cap

1. Article XVII–A of the Public School Code of 1949, added by the Act of June 19, 1997, No. 1997–22, (P.L. 225, No. 22), § 1, *as amended*, 24 P.S. §§ 17–1701–A–17–1751–A.

included in a written charter. Based on the plain text of 24 P.S. § 17-1723-A(d), we conclude that an enrollment cap is valid if agreed to by the parties as part of a written charter. Accordingly, we reverse.

Pursuant to the Charter School Law, Intervenor, the Walter D. Palmer Leadership Learning Partners Charter School (hereinafter "Charter School"), was awarded a charter for a five-year term commencing on July 1, 2000, and ending on June 30, 2005. In November 2004, the Charter School filed a renewal application. On March 16, 2005, the School Reform Commission of the School District of Philadelphia (hereinafter "SRC")[2] adopted a resolution that granted, "upon signing a new Charter Agreement," the Charter School's request for renewal of the charter for a second five-year period commencing on September 1, 2005.[3] SRC Resolution, dated 3/16/05, at 1. As set forth in the final paragraph of the SRC Resolution, the SRC denied the Charter School's request for expansion of enrollment, and granted approval "to enroll a maximum of six hundred and seventy five (675) students and serve grades kindergarten through 8." *Id.* at 2. The SRC and the Charter School then entered into, as of September 1, 2005, a legally binding agreement that incorporated the SRC Resolution in its entirety and extended the charter for five years, commencing on September 1, 2005, and ending on June 30, 2010 (hereinafter "2005 Charter").

The relevant portions of the 2005 Charter are as follows:

2. In December 2001, the Pennsylvania Secretary of Education declared the Philadelphia School District to be a distressed school district pursuant to the Distressed School Law, 24 P.S. §§ 6-691-6-697. Accordingly, since December 21, 2001, the SRC has been the governing body of the Philadelphia School District.

3. Upon reviewing the Charter School's application for renewal, the SRC determined that the Charter School had failed "to make adequate yearly progress as required by No Child Left Behind." SRC Resolution, dated 3/16/05, at 1. Accordingly, the SRC Resolution required that the Charter School "[s]ubmit revised academic goals that correspond with No Child Left Behind" by April 1, 2005, and conditioned its grant of the charter renewal upon the Charter School's meeting this requirement. *Id.* This provision is not at issue here.

WHEREAS, on March 16, 2005, the SRC adopted Resolution SRC–11 ("Resolution") **attached hereto as *Exhibit A* and made a part hereof,** which authorized the renewal of the Charter for the Charter School upon meeting the condition(s) set forth in said Resolution; . . .

NOW THEREFORE, in consideration of the promises and mutual covenants and agreements set forth herein, the SRC and the Charter School **intending to be legally bound,** hereby **mutually agree to the above Recitals and the following:**

### *GRANT OF CHARTER*

**Subject to all of the terms and conditions set forth in this Charter,** the SRC hereby grants to the Charter Board this Charter to operate the Charter School. . . .

It is **specifically understood and agreed** between the parties hereto that:

1. **The Charter School shall comply with the Resolution.** . . .

\* \* \*

6. The Application . . . and all other Exhibits, appendices and attachments hereto **are incorporated herein by reference as if fully set forth. This Charter and all Exhibits hereto constitute a *legally binding agreement*** for the Term set forth above and the terms of this Charter cannot be changed absent a written amendment to this Charter signed by both parties.

Charter for Leadership Learning Partners Charter School, dated 9/1/05, ("2005 Charter") at 2–3 (bold and italics emphases added).

Thus, most relevantly to the instant matter, the 2005 Charter explicitly referenced and incorporated the SRC Resolution, one provision of which capped student enrollment at 675; explicitly mandated that the Charter School comply with the SRC Resolution; and explicitly constituted a legally binding, mutual agreement of five years duration, the terms of which could not be changed absent a written agreement signed by

both parties. The legally binding nature of the terms of the 2005 Charter is mandated by a provision of the Charter School Law. *See* 24 P.S. § 17–1720–A.[4]

Notwithstanding the terms of the 2005 Charter, the Charter School consistently enrolled more than the 675 students permitted by that Charter. For the 2007–2008 school year, the Charter School's average daily enrollment was approximately 729 students. For the 2008–2009 and 2009–2010 school years, the average daily enrollment was approximately 732 and 765 students, respectively. In each school year, the School District of Philadelphia ("School District") provided funding for 675 students, the number at which enrollment had been capped in the governing 2005 Charter.

In July 2010, asserting that it had been underpaid by the School District, the Charter School requested that the Pennsylvania Department of Education (hereinafter "Department") withhold $1,678,579 from the School District's basic education subsidy allocation, pursuant to 24 P.S. § 17–1725–A(a)(5), as payment to the Charter School for the students it had educated in addition to the 675 students permitted by the enrollment cap for school years 2007–2008, 2008–2009, and 2009–2010. In September 2010, the Department complied with this request and notified the School District that it had done so. The School District objected to the withholding and requested a hearing regarding its propriety. After an administrative hearing was held before a Department hearing officer on December 2, 2010, the matter went before the Acting Secre-

4. Section 17–1720–A(a) of the Charter School Law provides as follows:
   § 1720–A(a). Term and form of charter
   (a) Upon approval of a charter application under section 1717–A, a written charter shall be developed which shall contain the provisions of the charter application and which shall be signed by the local board of school directors of a school district . . . and the board of trustees of the charter school. This written charter, when duly signed by the local board of school directors of a school district . . . and the charter school's board of trustees, shall act as legal authorization for the establishment of a charter school. **This written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees. . . .**
   24 P.S. § 17–1720–A(a) (emphasis added to text).

tary of the Department (hereinafter "Secretary") upon a certified record for final adjudication.

The Secretary determined that the Charter School had agreed and legally assented to the enrollment cap when it signed the 2005 Charter, and therefore, the Charter School was not entitled to payment for students enrolled above that cap in the 2007–2008 school year. *In Re: Walter D. Palmer Leadership Learning Partners Charter School and the School District of Philadelphia,* No. EDU–2010–SLAP–01373889, Opinion and Order of the Acting Secretary of Education, dated 3/4/11 (hereinafter "Secretary's Opinion and Order") at 12–15. However, with regard to the school years 2008–2009 and 2009–2010, the Secretary determined that the enrollment cap set forth in the 2005 Charter was no longer valid because of the enactment of an amendment to the Charter School Law which had become effective on July 1, 2008, and is set forth in 24 P.S. § 17–1723–A(d). Secretary's Opinion and Order at 14–15. The amendment in § 1723–A(d) provides as follows:

(d)(1) **Enrollment of students in a charter school** or cyber charter school **shall not be subject to a cap** or otherwise limited by any past or future action of a board of school directors, a board of control established under Article VII–B, a special board of control established under section 62 or any other governing authority, **unless agreed to by the charter school** or cyber charter school **as part of a written charter pursuant to section 1720–A.**

(2) **The provisions of this subsection shall apply** to a charter school or cyber charter school **regardless of whether the charter was approved prior to or approved subsequent to the effective date of this subsection.**

24 P.S. § 17–1723–A(d), effective July 1, 2008 (emphases supplied).

Based on his interpretation of the text of § 1723–A(d)(1), the Secretary concluded that, to maintain the 2005 Charter's enrollment cap subsequent to the effective date of this amendment, the School District was required to re-obtain the Charter School's "legal assent" to the cap. Secretary's Opinion and

Order at 14. The Secretary reasoned that the SRC Resolution, which included the enrollment cap, "constitute[d] past action" which could not "unilaterally limit[ ]" the Charter School beyond the effective date of § 1723–A(d)(1). *Id.* Thus, the Secretary determined that the Charter School was entitled to payment by the School District for the education of *all* the students enrolled in the school for the years 2008–2009 and 2009–2010, including those enrolled beyond the cap agreed to in the 2005 Charter. *Id.* at 14–16. Pursuant to the Secretary's decision, the School District was required to pay the Charter School $1,253,225 to cover the cost of educating those students who had been enrolled over the enrollment cap during the school years 2008–2009 and 2009–2010.

The School District appealed to the Commonwealth Court, which affirmed, relying, like the Secretary, on the 2008 amendment to the Charter School Law set forth in 24 P.S. § 17–1723–A(d). *School District of Philadelphia v. Department of Education,* 41 A.3d 222 (Pa.Cmwlth.2012) (*en banc* ). The court explained its rationale as follows. Pursuant to § 1720–A(a) of the Charter School Law,[5] "the signing of a charter is nothing more than a 'legal authorization for the establishment of a charter school' [and thus] any conditions included in the charter were imposed upon the Charter School." *School District of Philadelphia, supra* at 227 (quoting 24 P.S. § 17–1720–A(a)). "[A] unilateral action does not constitute an agreement," and therefore, subsequent to the enactment of the 2008 amendment to the Charter School Law set forth in § 1723–A(d), "the Charter School cannot be limited by a cap that was unilaterally imposed in 2005." *Id.* at 228. The Commonwealth Court, like the Secretary, held that for an enrollment cap to be valid subsequent to the enactment of § 1723–A(d), a second, new agreement between the parties was required.[6]

This Court granted the School District's petition for allowance of appeal, limited to the following issue:

5.  Section 1720–A(a) is reproduced in n. 4.

6.  President Judge Dante Pellegrini dissented from the six-member majority *en banc* panel.

Did the Commonwealth Court err when it held that a cap on student enrollment in a 2005 school charter was valid for school years before 2008 but was invalid for school years after 2008, even though the Charter School Law states that a cap is permissible if "agreed to by the charter school . . . as part of a written charter . . . whether . . . approved prior to or . . . subsequent to the [law's] effective date?"

*School District of Philadelphia v. Department of Education,* 620 Pa. 443, 68 A.3d 327 (2013).

■■■■ This matter hinges on statutory interpretation of the Charter School Law, which, as a question of law, is subject to a *de novo* standard of review and a plenary scope of review. *Slippery Rock Area School District v. Pennsylvania Cyber Charter School,* 612 Pa. 486, 31 A.3d 657, 663 (2011); *Knox v. Board of School Directors of Susquenita School District,* 585 Pa. 171, 888 A.2d 640, 645 (2005). The object of statutory interpretation is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S. § 1921(a). The best indication of legislative intent is the plain language of the statute. When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Knox, supra* ("When the words of a statute are clear and free from ambiguity[,] the legislative intent is to be gleaned from those very words.") (citation omitted). To the extent that this matter involves findings of fact made by the Secretary, our standard of review is limited to determining whether substantial evidence supports those findings. *Department of Labor & Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board,* 611 Pa. 10, 23 A.3d 511, 514 (2011); 2 Pa.C.S. § 704.

The School District argues that the Charter School agreed to the enrollment cap when it signed the 2005 Charter, a written, legally binding agreement, and the enactment of § 1723–A(d) in no sense negated the 2005 Charter or invalidated the enrollment cap contained therein. The School District's Brief at 22–25, 29–31, 42–44. In contrast, the Charter School argues that it "did not expressly 'agree to' the [ ]

enrollment cap as part of its 'written charter' issued in 2005," and thus the cap was rendered "invalid and unenforceable as a matter of law under Section 1723–A(d)." The Charter School's Brief at 17; *id.* at 32. To support its position, the Charter School asserts that the enrollment cap was a unilaterally imposed term of the SRC Resolution, not a mutually agreed-upon term of the 2005 Charter. Furthermore, the Charter School asserts, the enrollment cap did not appear in the " 'written' text" of the 2005 Charter, but rather was included only by "the alleged incorporation by reference" of the SRC Resolution into the 2005 Charter. *Id.* at 18–19, 21–25, 32. The Charter School's arguments and assertions not only are contrary to the plain text of § 1723–A(d), but also ignore the express terms of the 2005 Charter.

Pursuant to § 1723–A(d)(1), "[e]nrollment of students in a charter school ... shall not be subject to a cap ... unless agreed to by the charter school ... as part of a written charter pursuant to section 1720–A." There is no ambiguity in this language—a written charter, agreed to by the charter school, may set a cap on the number of students to be enrolled. Pursuant to § 1723–A(d)(2), the above provision is applicable "regardless of whether the charter was approved prior to or is approved subsequent to the effective date of this subsection." There is no ambiguity in this language either—charters approved prior to and charters approved subsequent to the effective date of § 1723–A(d) are treated equivalently for purposes of this subsection. Because there is no ambiguity in the language of § 1723–A(d), we look no further than the plain meaning of the statutory text to conclude that the number of students enrolled in a charter school may be subject to a cap, prior to and subsequent to the effective date of § 1723–A, if the cap is included in the written charter agreed to by the charter school.

Nothing in the language of § 1723–A(d) can support the view of the Commonwealth Court and the Secretary that an enrollment cap in a written charter executed prior to the enactment of § 17–1723–A(d) becomes invalid after July 2008, unless the parties reach a second, new agreement re-setting

the terms of the cap. The court and the Secretary have imposed a requirement that has no basis in the statute; in fact, the plain language of § 1723–A is directly contrary to their construction. When, as in this case, a charter has been approved prior to enactment of § 1723–A(d), that subsection applies, exactly as it applies to charters approved subsequent to the enactment. Regardless of the timing of the charter approval relative to the date of § 1723–A(d)'s enactment, the crucial requirement remains the same: the charter school must have agreed to the enrollment cap "as part of its written charter." 24 P.S. § 17–1723–A(d)(1).

Here, the terms of the 2005 Charter make unmistakably clear that the Charter School agreed to the enrollment cap as part of a legally binding agreement. The SRC Resolution, which included the enrollment cap, was "attached [to the 2005 Charter] as Exhibit A and made a part [of the 2005 Charter]." 2005 Charter at 2. The Exhibits, which included the SRC Resolution as Exhibit A, were "incorporated [into the 2005 Charter] by reference as if fully set forth." *Id.* at 3 ¶ 6. The Charter School expressly agreed that it "shall comply with the [SRC] Resolution." *Id.* at 2 ¶ 1. Finally, the 2005 Charter provided that "[t]his Charter and all Exhibits hereto constitute a *legally binding agreement* for the Term set forth above and the terms of this Charter cannot be changed absent a written agreement to this Charter signed by both parties." *Id.* at 3 ¶ 6 (emphasis supplied). There is no dispute that the Charter School signed the 2005 Charter. By doing so, it agreed to all the terms of the Charter, including the enrollment cap.[7]

The Charter School's arguments to the contrary lack merit. The Charter School's contention that the enrollment cap was somehow unilaterally imposed without its consent, acquiescence, or agreement is belied by the straightforward text of the 2005 Charter, a "legally binding agreement" signed by the

7. We also note that, as a factual matter, the Secretary found that the Charter School agreed to the enrollment cap in September 2005 when it signed the 2005 Charter. *See* Secretary's Opinion and Order at 12–14.

Charter School. The Charter School asserts that it showed its lack of acquiescence to the cap by consistently enrolling more students than permitted by the cap, see Charter School's Brief at 25–28, but this fundamentally flawed assertion demonstrates no such thing. The Charter School's enrollment of more students than permitted by the cap shows only that the Charter School intentionally failed to abide by the legally binding agreement that it had signed. The Charter School's further contention that a charter is not an agreement, see Charter School's Brief at 23, is similarly belied by the text of the 2005 Charter. See 2005 Charter at 3 ¶ 6 ("This Charter and all Exhibits hereto constitute a legally binding agreement...."). Finally, the Charter School's assertion that the enrollment cap was invalid and unenforceable because it was not "in the text of the written charter," but rather was "merely incorporated by reference" to the SRC Resolution is frivolous. See Charter School's Brief at 19. By the express terms of the 2005 Charter, the SRC Resolution was "attached" to and "made a part" of the 2005 Charter, and the Charter School agreed to "comply with the Resolution." 2005 Charter at 2.[8]

For the reasons set forth above, we reverse the order of the Commonwealth Court insofar as it affirmed the Secretary's order requiring the School District to pay the Charter School for those students enrolled over the enrollment cap set forth in the 2005 Charter. Case remanded for proceedings consistent with this opinion.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BAER, TODD and STEVENS join the opinion.

8. The parties followed this Court's directive to address in their briefs "whether a charter school's signing of a charter that contains a unilaterally imposed cap on enrollment can be considered 'implied acquiescence' to that cap, sufficient to satisfy the requirement for an express agreement under 24 P.S. § 17–1723–A(d)(1), or whether something more is required in order to constitute such an express agreement." School District of Philadelphia v. Department of Education, 620 Pa. 443, 68 A.3d 327 (2013). Considering our resolution of the School District's issue accepted for review, we need not address the second matter any further.