**DISCOVERY CHARTER SCHOOL, Petitioner**

v.

**SCHOOL DISTRICT OF PHILADELPHIA and School Reform Commission, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 2015.

Decided March 10, 2015.

Kevin M. McKenna, Exton, for petitioner.

Paul J. Cianci, Huntingdon Valley, for respondents.

BEFORE: ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

This matter is a petition for review filed by Discovery Charter School (Discovery) appealing an order of the State Charter School Appeal Board (Board) that dismissed for lack of jurisdiction Discovery's appeal from the refusal of the School Reform Commission (SRC)[1] and the School District of Philadelphia (collectively, School District) to act on Discovery's request for amendment of its charter. Because we conclude that the School District's failure to act constitutes a denial of the amendment, we reverse and remand this case to the Board with instructions to review the School District's denial of the amendment in accordance with this Court's decisions in *Northside Urban Pathways Charter School v. State Charter School*

---

1. Under Section 696 of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, added by the Act of April 27, 1998, P.L. 270, *as amended*, 24 P.S. § 6–696, the School District of Philadelphia is governed by the SRC, which exercises the powers of a board of school directors.

*Appeal Board*, 56 A.3d 80 (Pa.Cmwlth. 2012) *(en banc)*, and *Lehigh Valley Dual Language Charter School v. Bethlehem Area School District*, 97 A.3d 401 (Pa. Cmwlth.2014).

The School District granted Discovery a five-year charter under the Charter School Law[2] in 2003 and renewed its charter in 2008 for a second five-year term ending June 30, 2013. (Record Item (R. Item) 16, Discovery 2008 Charter, Reproduced Record (R.R.) at 1400a–1401a, 1404a.) Discovery's charter provides that it "may enroll students in grades K through 8 with a maximum enrollment of 620 students" and that "[t]he Charter School acknowledges and agrees that neither the School District nor the Commonwealth of Pennsylvania shall have any obligation whatsoever to provide any funding in excess of the amount derived from the enrollment limits set forth in this Charter." (*Id.*, R.R. at 1408a.) Because Discovery agreed to the cap in the written charter that it signed, this enrollment cap is legally valid and enforceable under Section 1723–A(d) of the Charter School Law, 24 P.S. § 17–1723–A(d), which prohibits school districts from imposing enrollment caps on charter schools unless agreed to by the charter school as part of its written charter. *School District of Philadelphia v. Department of Education*, — Pa. —, 92 A.3d 746, 751–53 (2014). Discovery's charter further provides that it shall operate its school at 5070 Parkside Avenue, Philadelphia, that it shall not relocate the school to a different facility "without giving notice thereof to the School District not less than sixty (60) days before the proposed ... relocation," and that if the relocation "constitutes a material change," it shall not relocate "without the prior written consent of the School District, which consent the School District shall not unreasonably withhold, condition or delay." (R. Item 16, Discovery 2008 Charter, R.R. at 1406a.) Discovery's student population is over 98% black (non-Hispanic) and 13% of its students have Individual Education Plans. (R. Item 24, Combined Certified Record Item (C.C.R.) 10 School District Draft 2013 Renewal Recommendation Report, R.R. at 1139a–1140a.)

Although Discovery did not meet Pennsylvania's Adequate Yearly Progress (AYP) academic performance standards in three of the five years of its 2003 charter, in its renewal term it was rated as "Making Progress" in 2008–2009 and it met AYP standards in 2009–2010, 2010–2011 and 2011–2012, all three of the most recent years. (R. Item 24, C.C.R. 4 Discovery AYP Report, R.R. at 958a; R. Item 24, C.C.R. 10 School District Draft 2013 Renewal Recommendation Report, R.R. at 1140a.) Discovery's percentages of students scoring proficient or higher in the most recent school year, 2011–2012, were 63.4% in Reading and 72.2% in Math. (R. Item 24, C.C.R. 10 School District Draft 2013 Renewal Recommendation Report, R.R. at 1132a, 1140a.) Throughout its renewal charter term, Discovery's percentages of students scoring proficient or higher consistently exceeded the average for School District schools in Reading and consistently exceeded the average for both School District schools and Philadelphia charter schools in Math. (*Id.*, R.R. at 1132a.)

Discovery receives more enrollment applications than the number of students that it can admit under the 620–student cap in its charter and it had a waiting list of 1,448 students after its admissions lottery for the 2012–2013 school year. (R. Item 24, C.C.R. 8 Discovery 2012–13 Renewal Application & Modification Adden-

**2.** Act of June 19, 1997, P.L. 225, *as amended,* 24 P.S. §§ 17–1701–A—17–1751–A.

dum, R.R. at 1108a, 1115a.) In 2012, Discovery acquired land and began construction of a new school building capable of accommodating a larger enrollment at 4700 Parkside Avenue, three blocks from the location identified in its charter, intending to move into that new facility in the 2013–2014 school year. (*Id.*, R.R. at 1090a, 1120a.)

On December 17, 2012, Discovery filed an application to renew its charter for a third five-year term to run from 2013–2014 through 2017–2018 and advised the School District of the new facility and planned 2013–2014 relocation. (R. Item 24, C.C.R. 7 Discovery Letter submitting Renewal Application, R.R. at 985a; R. Item 24, C.C.R. 8 Discovery 2012–13 Renewal Application & Modification Addendum, R.R. at 1063a–1113a.) With its renewal application, Discovery also filed a request for amendment of its charter to increase its enrollment to 1,050 students over four years, consisting of an enrollment increase of 130 additional students for 2013–2014, 100 additional students for 2014–2015, 100 additional students for 2015–2016, and 100 additional students for 2016–2017. (R. Item 24, C.C.R. 8 Discovery 2012–13 Renewal Application & Modification Addendum, R.R. at 1114a–1125a.)

In May 2013, following evaluation of Discovery's renewal application, the School District's Office of Charter Schools recommended that Discovery be granted a five-year renewal of its charter, finding no deficiencies in Discovery's academic performance or its student, parent and staff satisfaction, and rating Discovery as acceptable with minor deficiencies in its organizational health and financial health. (R. Item 24, C.C.R. 10 School District Draft 2013 Renewal Recommendation Report, R.R. at 1131a–1140a.) On May 20, 2013, the School District sent Discovery a draft charter agreement that contained the same 620–student enrollment cap that is in Discovery's 2008 charter. (R. Item 24, C.C.R. 10 Email from School District to Discovery and Draft 2013 Charter, R.R. at 1129a, 1141a–1183a.) Discovery did not sign the draft charter agreement because it did not grant Discovery the increased enrollment that it sought. (R. Item 24, C.C.R. 12 June 17, 2013 Letter from Discovery to School District, R.R. at 1189a–1191a.)

The SRC did not and has not acted on Discovery's request for amendment because Discovery did not agree to the enrollment cap in the draft charter agreement. (R. Item 19, School District Answer to 11/15/13 Petition for Appeal, R.R. at 1307a ¶ 13.) In addition, the School District on July 15, 2013 informed Discovery that "the SRC would not be voting on seat expansion for any charter school for the 2013–14 school year." (R. Item 31, School District Answer to 7/30/13 Petition for Appeal, R.R. at 178a ¶ 16.) In October 2013, the School District sent Discovery a letter stating that "[t]he SRC has established an authorized maximum enrollment for your Charter School of 620 students,"[3] that because Discovery had not signed a charter agreement, it "is out of compliance and is

---

**3.** On November 15, 2012 and August 15, 2013, the SRC adopted resolutions pursuant to its authority under Section 696(i)(3) of the Public School Code suspending the application to the School District of Section 1723–A(d) of the Charter School Law, concerning enrollment caps. These resolutions are the subject of two other appellate proceedings, *Richard Allen Preparatory Charter School et al.* *v. School District of Philadelphia*, Nos. 1474 to 1484 C.D. 2014, pending in this Court, and *West Philadelphia Achievement Charter Elementary School v. School District of Philadelphia*, No. 31 E.M. 2014, pending in the Pennsylvania Supreme Court. The validity and effect of the SRC's suspension of Section 1723–A(d) are not before us in this appeal.

in violation of Section 1720–A of the Charter School Law," and that failure to sign a charter agreement that contained "a maximum number of students that reflects your Charter School's managed enrollment and growth" by December 15, 2013 "shall be grounds for suspension, nonrenewal or revocation" of Discovery's charter. (R. Item 24, C.C.R. 19 October 16, 2013 Letter from School District to Discovery, R.R. at 1234a–1236a.) The SRC, however, has not taken any action to suspend, non-renew or revoke Discovery's charter. (R. Item 3, Board Meeting Transcript, R.R. at 1837a; R. Item 19, School District Answer to 11/15/13 Petition for Appeal R.R. at 1309a ¶ 19.)

On July 30, 2013, Discovery filed a petition for appeal with the Board seeking an order granting the charter amendment, asserting that the School District had denied the request for amendment by refusing to act on it. On November 7, 2013, the School District moved to quash Discovery's appeal for lack of jurisdiction, asserting that its inaction on the request for amendment did not constitute a decision appealable to the Board. On November 15, 2013, Discovery filed a second petition for appeal with the Board, again asserting that the School District's refusal to act constituted a denial of the request for amendment. The parties agreed that the matter would proceed and be decided on Discovery's November 15, 2013 petition for appeal, with the July 30, 2013 petition for appeal and the School District's answer to that petition for appeal remaining as part of the record. On January 9, 2014, the School District moved to quash Discovery's November 15, 2013 petition for appeal for lack of jurisdiction, asserting that neither the failure to act on the charter renewal application nor the failure to act on the request for amendment constituted a decision appealable to the Board.

The Board voted on March 25, 2014, to grant the School District's motion to quash Discovery's appeal. On April 16, 2014, the Board issued its Opinion and Order granting the School District's motion to quash, holding that it did not have jurisdiction because there was no final action denying the charter renewal or request for amendment. On April 24, 2014, Discovery timely filed this petition for review.

This Court's review of a decision of the Board is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the decision is not supported by substantial evidence. *Northside Urban Pathways Charter School,* 56 A.3d at 83 n. 2. Whether the Board has jurisdiction over Discovery's appeal, however, is a question of law subject to this Court's *de novo* and plenary review. *Mazur v. Trinity Area School District,* 599 Pa. 232, 961 A.2d 96, 101 (2008); *Mosaica Academy Charter School v. Department of Education,* 572 Pa. 191, 813 A.2d 813, 817 (2002).

The Charter School Law provides that the Board has exclusive jurisdiction over the decision of a school district to deny an initial charter application or to revoke or not renew a charter. Sections 1717–A(f), (i)(1) and 1729–A(d) of the Charter School Law, 24 P.S. §§ 17–1717–A(f), (i)(1), 17–1729–A(d). Although the statute does not expressly address charter amendments, this Court has held that charter schools have the right under the Charter School Law to seek amendment of their charters. *Northside Urban Pathways Charter School,* 56 A.3d at 84–87; *see also Lehigh Valley Dual Language Charter School,* 97 A.3d at 404–06; *Montessori Regional Charter School v. Millcreek Township School District,* 55 A.3d 196, 201 (Pa.Cmwlth.2012) (*en banc*). The Board by necessary implication has jurisdiction to hear appeals of school district

denials of proposed charter amendments, and is to review such denials "in the same manner it would review a decision revoking or not renewing a charter." *Northside Urban Pathways Charter School*, 56 A.3d at 85–87; *see also Lehigh Valley Dual Language Charter School*, 97 A.3d at 408–09.

The Charter School Law requires that school districts hold a public hearing on a new charter application within 45 days and grant or deny the application within 75 days of the first public hearing on the application, and gives the Board jurisdiction to directly review and render a decision on a charter application where a school district fails to act within those specified time periods. 24 P.S. § 17–1717–A(d)–(g). It does not set any time period within which a school district must act on a charter renewal or amendment request.

 The issue here is whether, notwithstanding the absence of a specific statutory deadline, the School District's failure to act on Discovery's amendment request constitutes a denial of the amendment. In deciding this issue, we must keep in mind this Court's reasoning in holding that the Board has jurisdiction over denial of charter amendments. In *Northside Urban Pathways Charter School*, this Court concluded:

> The Charter School Law expressly vests the [Board] with jurisdiction over every significant decision involving a charter school.... "[L]ocal school boards have a significant interest in whether charters are granted; indeed the legislative history [of the Charter School Law] contains frequent references to the bias of local school boards against charter schools." The legislature dealt with this inherent bias by ensuring that the [Board] has jurisdiction to review every significant decision that could be made by a school district with respect to a charter school.

> Without the oversight of the [Board], school districts could restrict the creation and growth of charter schools, thereby defeating the legislative intent of providing parents and students with expanded choices in public education.

56 A.3d at 85 (citation omitted). Board jurisdiction to review denials of requests for charter amendments must exist because permitting charter amendments "only on the non-reviewable grace of a school district, would give school districts a veto power that is inconsistent with the overall purpose of the Charter School Law." *Id.* at 86–87.

 This Court has also held that a school district's failure to act on a charter school's renewal application is not a denial of the renewal and is therefore not appealable to the Board. *Community Academy of Philadelphia Charter School v. Philadelphia School District School Reform Commission*, 65 A.3d 1023, 1030–31 (Pa. Cmwlth.2013). In *Community Academy*, this Court recognized that if a school district's failure to act on a charter renewal "constituted the equivalent of a nonrenewal," the Board would have jurisdiction over an appeal from the failure to act. *Id.* at 1030. The Court concluded, however, that because Section 1729–A of the Charter School Law imposes procedural requirements and protections with which a school district must comply before it can non-renew a school's charter, inaction on a renewal application cannot be treated as the equivalent of a denial. 65 A.3d at 1030–31. The Court accordingly held that in the absence of formal action renewing or non-renewing the charter (*i.e.*, signing the renewed charter or issuing a final determination of nonrenewal), we must conclude that an application to renew remains pending until a renewed charter is signed or a final determination of nonrenewal issued without any

effect on the continued operation of the charter school. In other words, until a final determination is issued regarding an application to renew, the charter school may continue to function as if its charter were still in effect, because no formal action to non-renew has been completed.

*Id.*[4]

The Board held and the School District argues that under *Community Academy,* failure to act on a request for amendment is likewise unappealable. We do not agree. The effect of inaction on an amendment is completely different from inaction on a charter renewal. Under *Community Academy,* refusal to act on a renewal application effectively gives the charter school an indefinite extension of the right it seeks, continued operation under its charter until the school district acts. 65 A.3d at 1030–31. Failure to act on a request for amendment has the opposite consequence—the charter school cannot operate under the amendment it seeks unless and until the school district chooses to act. In addition, in contrast to the requirements of Section 1729–A for nonrenewal and revocation of charters, the Charter School Law does not prescribe specific procedural requirements before a school district can deny a request to amend a charter. Thus, unlike the situation in *Community Academy,* recognition that refusal to act on an amendment request constitutes a denial of the amendment would not undermine any provision of the Charter School Law.

▮ Examining the practical effect of inaction on a request for charter amendment demonstrates that it does constitute the equivalent of a denial. When a school district refuses to act on a request for amendment in time for the charter amendment to go into effect for a school year for which the amendment is sought, the failure to act has the same effect as a denial: the charter school cannot operate under the requested amendment for that school year. Where the charter school has filed its request for amendment within the time periods applicable to renewal or amendment applications for that school year in that school district, it can be concluded that the inaction is not a result of insufficient time to consider the amendment and instead constitutes a refusal to act on the amendment. Absent recognition of a right to appeal such inaction to the Board as a denial of the request for amendment, school districts could freely evade Board review by simply refusing to vote on amendments that they do not wish to grant. This would produce the very result that this Court rejected in *Northside Urban Pathways Charter School;* charter amendments would be at "the non-reviewable grace of a school district," subject to a school district "veto power that is inconsistent with the overall purpose of the Charter School Law." 56 A.3d at 87. Where a

---

4. Although *Community Academy* involved a failure of the SRC to obtain a majority vote on the renewal, rather than a refusal to vote, the Court's rationale and holding are equally applicable to a deliberate refusal to act on a renewal request. The Court's conclusion that there was no appealable action was based on the charter school's due process rights to continue to operate under its existing charter unless the school district complies with the procedural protections required to non-renew or revoke a charter, not on the nature of the school district's inaction. 65 A.3d at 1030–31. Contrary to the School District's assertions in its October 2013 letter to Discovery, the failure to act on the renewal cannot subject Discovery to a loss or suspension of its charter. Under *Community Academy,* the School District cannot take any action against Discovery for continuing to operate without signing a new proposed charter agreement because the School District's failure to act entitles Discovery to "continue to function as if its charter were still in effect." *Id.* at 1031.

government body's refusal to act leaves a party with no other forum to assert its rights, the refusal to act constitutes an appealable decision. *Montessori Regional Charter School,* 55 A.3d at 201.

██ Here, Discovery filed its request for amendment seeking to amend its charter as of school year 2013–2014 on December 17, 2012, before the School District's December 19, 2012 deadline for renewal and amendment applications for that school year. (*See* R. Item 24, C.C.R. 8 Discovery 2012–13 Renewal Application & Modification Addendum, R.R. at 1113a.) In the six months to the end of the 2012–2013 school year and the more than eight months before the start of the 2013–2014 school year, the School District took no action at all on Discovery's request for amendment and did not even list it to be addressed at an SRC meeting. That inaction, by itself, was sufficient to constitute a denial of the amendment over which the Board has jurisdiction.

Indeed, the School District's conduct here illustrates why failure to act on a charter amendment request must be treated as an appealable denial. The School District has admitted that it in fact decided to deny Discovery's amendment request with respect to school year 2013–2014, as it had decided not to grant any amendments of the type sought by Discovery for that school year for any charter school. (R. Item 31, School District Answer to 7/30/13 Petition for Appeal, R.R. at 178a ¶ 16.) In addition, the School District acknowledged that it refused to act on Discovery's proposed amendment unless Discovery complied with a separate condition of signing a particular form of charter agreement with an enrollment cap inconsistent with Discovery's amendment request. (R. Item 19, School District Answer to 11/15/13 Petition for Appeal, R.R. at 1307a ¶ 13.) *See Montessori Regional Charter School,* 55 A.3d

at 201 (school district's deferral of decision on charter amendment until charter school complied with requirements unnecessary for the amendment process constitutes a denial of the amendment).

For the foregoing reasons, we conclude that the School District's inaction on Discovery's request for amendment constitutes a denial of the amendment and that the Board therefore erred in concluding that it lacked jurisdiction. Accordingly, we reverse the Board's dismissal of Discovery's appeal and remand this matter to the Board to review the denial of Discovery's amendment request as it would review a school district's decision to revoke or to not renew a charter under Section 1729–A of the Charter School Law, 24 P.S. § 17–1729–A.

Judge COHN JUBELIRER did not participate in the decision of this case.

## *ORDER*

AND NOW, this 10th day of March, 2015, the order of the State Charter School Appeal Board (Board) dated April 16, 2014 in the above-captioned matter is REVERSED, and this matter is REMANDED to the Board to review the denial of Discovery Charter School's amendment request as it would review a school district's decision to revoke or to not renew a charter under Section 1729–A of the Charter School Law.

Jurisdiction relinquished.