William Madara, Plaintiff, *v.* Commonwealth of Pennsylvania, Robert P. Kane, Secretary of Revenue, Defendant.

Argued March 5, 1974, before President Judge Bowman, and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Stephen Cohen,* for plaintiff.

*Raymond Kleiman,* Deputy Attorney General, with him *Israel Packel,* Attorney General, for defendant.

OPINION BY JUDGE MENCER, May 10, 1974:

William Madara (Madara) purchased a 50-cent Pennsylvania lottery ticket, No. 921746, with a drawing date of June 14, 1972. Thereafter, his wallet containing the ticket and other valuables was mislaid and not recovered until June 16, 1973, at which time the lottery ticket was presented to the Bureau of State Lotteries as a prize claim. On June 22, 1973, the Bureau denied Madara's claim.

Madara filed a complaint in mandamus to compel Robert Kane, Secretary of Revenue,[1] to honor lottery ticket No. 921746 as a winning ticket and alleged damages in the amount of $1 million. The defendant filed preliminary objections to the complaint in mandamus, a part of which was a demurrer asserting that Madara failed to state a cause of action.

An examination of the complaint[2] discloses that in pertinent part Madara merely (1) identifies the parties to the suit, (2) asserts purchase and ownership of the

---

[1] Vincent X. Yakowicz is the present Secretary of Revenue.

[2] Preliminary objections in the nature of a demurrer admit all well-pleaded, material, and relevant facts in the complaint. *Lynch v. Gates,* 433 Pa. 531, 252 A.2d 633 (1969).

lottery ticket, (3) alleges mislaying the ticket (inferentially because of the flood Agnes), (4) relates finding and presenting the ticket for claim to the Bureau (1 year and 2 days after the drawing date), and (5) states a denial of the claim by virtue of which he contends he suffered damages.

The complaint does not allege that Madara's ticket number was selected as a winner at the drawing of June 14, 1972 or any other drawing, although such is implied by his presenting it subsequently as a prize claim. A literal reading of Madara's complaint would indicate that the purchase of a lottery ticket and its presentation to the Bureau of State Lotteries, coupled with the Bureau's denial, would result in damages to the owner of the ticket. Thus, the defendant's preliminary objection that the plaintiff has failed to state a cause of action has merit here.

However, both parties urge us to interpret Section 14 of the State Lottery Law,[3] 72 P.S. §3761-14, which reads: "Unclaimed prize money on a winning lottery ticket or share shall be retained by the secretary for payment to the person entitled thereto for one year after the drawing in which the prize was won. If no claim is made within such period, the prize money shall be paid into the State Lottery Fund and used for purposes as otherwise herein provided."

We are here confronted with a drawing held on June 14, 1972 and a lottery ticket presented for a prize claim on June 16, 1973. For our consideration of the question raised in this appeal, it matters not whether the claim was made 1 or 2 days beyond the 1-year period.

We see the question to be whether or not Section 14 places a 1-year time limitation on the presentation of prize claims under the State Lottery Law.

---

[3] Act of August 26, 1971, P.L. 351, as amended, 72 P.S. §3761-1 et seq.

Admittedly, Section 14 represents instructions or directions to the Secretary of Revenue relative to unclaimed prize money. There is nothing specific in this section concerning the presentation of claims by owners of lottery tickets. However, we are satisfied that, by necessary implication, all claims for prizes must be presented within 1 year after the drawing in which the prize was won.

Section 14 expressly requires the Secretary of Revenue (1) to retain for payment unclaimed prize money for 1 year after the drawing and (2), if no claim is made within the 1-year period, to pay the prize money into the State Lottery Fund to be used for purposes other than the payment of prizes. It follows that, once the Secretary of Revenue has paid the prize money into the State Lottery Fund, he is powerless to honor prize claims arising from drawings more than 1 year previous. Not only are there no funds available for such a purpose but, if other funds were utilized to honor such claims, we have no doubt that the Secretary of Revenue would be subject to surcharge.

It matters not whether we conclude that the lottery ticket owner is precluded, 1 year after the drawing, from making a prize claim or that he may make such a claim, nothing in the State Lottery Law prohibiting the same, but that the claim cannot be honored because there are no funds available for payment of the prize claimed. We must come face to face with the hard fact that, when the Legislature by statute calls for things to be done within stated times, they must be done so or rights fall. *Commonwealth v. Lukens Steel Company*, 402 Pa. 304, 167 A.2d 142 (1961).

Although we are sympathetic to the plaintiff, especially so since the complaint infers that his ticket was mislaid as a result of the flood Agnes and his claim may have been but 1 day late, the most we could conclude is that the provisions of Section 14, combined

with the silence of the State Lottery Law concerning the time for presenting claims, results in an unclear and ponderable situation. This being an action in mandamus, we are confronted with the well-settled rule that mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is *a clear legal right* in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy. *Unger v. Hampton Township*, 437 Pa. 399, 263 A.2d 385 (1970).

Concluding that the plaintiff has not stated a cause of action and does not have a clear legal right entitling him to relief in mandamus, we enter the following

ORDER

Now, this 10th day of May, 1974, the defendant's preliminary objection in the nature of a demurrer is sustained, and the complaint of the plaintiff is hereby dismissed.

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. My reading of the State Lottery Law, Act of August 26, 1971, P.L. 351, §1 et seq., 72 P.S. §3761-1 et seq., leads me to conclude that there is no specific statute of limitations imposed upon the holder of a winning lottery ticket setting forth a time within which the holder must present the ticket for payment. While recognizing that the majority is quite correct that there are deficiencies in the complaint of William Madara (Madara), they could be cured by an amended complaint, permissible under the rules governing our disposition of preliminary objections.

The issue presented to this Court is squarely on an interpretation of Section 14 of the State Lottery Law, 72 P.S. §3761-14, which reads: "Unclaimed prize money on a winning lottery ticket or share shall be retained by the secretary for payment to the person

entitled thereto for one year after the drawing in which the prize was won. If no claim is made within such period, the prize money shall be paid into the State Lottery Fund and used for the purposes as otherwise herein provided."

The two sentences contained in Section 14 concern only the Secretary. Section 14 gives no direction to the winning ticket holder. The majority therefore has been forced to infer a statute of limitations from Section 14. From my point of view, such an inference is improper. The Legislature has provided clear statutes of limitation in many statutes, and if the Legislature intended such, it could have clearly set forth such a limitation in the State Lottery Law.

The majority also concludes that the Secretary is "powerless" to honor prize claims arising from drawings one year previous, because there are "no funds available for such purpose." I disagree. Section 14 of the State Lottery Law states that after the period of one year, the Secretary shall pay into the "State Lottery Fund" the "unclaimed prize money" for "purposes as otherwise herein provided." Section 12 of the State Lottery Law, 72 P.S. §3761-12 gives us those purposes. Section 12 provides in pertinent part that:

"(a) All moneys received from the operation of the State lottery shall be deposited in a State Lottery Fund which is hereby created. Such moneys shall be used to the extent necessary for the payment of lottery prizes. . . .

(b) The moneys in said State Lottery Fund shall be appropriated only:

(1) For the payment of prizes to the holder of winning lottery tickets or shares. . . ."

Like Section 14, Section 12 places no restriction on the holder of a winning lottery ticket pertaining to the period of time within which he must present the winning ticket. There is nothing in the record of this

case which would indicate that there are not sufficient funds in the State Lottery Fund to pay Madara's claim. Even if there were not sufficient funds in the State Lottery Fund, the Act of August 22, 1961, P.L. 1049, §1, as amended, 72 P.S. §3611, provides that the Governor may direct funds to be transferred from the General Fund to other funds (including the State Lottery Fund) "for the purpose for which the fund to which they are transferred is appropriated by law." So that in any event, if Madara does have a winning ticket, there are funds available for payment thereon.

I would hold that at that moment in time when a lottery ticket holder's number is chosen, he or she obtains a claim to his or her winnings against the Secretary or the State Lottery Fund. That claim is a property right and according to Article I, Section 10 of the Pennsylvania Constitution of 1968, no "private property" may be taken or applied to the public use without authority of law. Our government may take or control one's property, but it may do so only within its constitutional powers and when the legislative intent is clear, specific and precise. See *Commonwealth v. Lombardo*, 356 Pa. 597, 52 A.2d 657 (1947).

This writer can see no significant difference between the claim in this case and claims for corporate dividends, for interest on bank deposits and for insurance claim benefits, all of which are covered by our escheats laws. (*See* Disposition of Abandoned and Unclaimed Property Act, Act of August 9, 1971, P.L. 286, 27 P.S. §1-1 et seq., and more especially the definition of "property" found in Section 2, 27 P.S. §1-2(7)). The winner's claim under a winning lottery ticket should be given an equivalent property status as a claim to dividends. If the Legislature intends to provide a forfeiture of the lottery winner's claim after a year from the date of the lottery drawing, then it should be required to so provide in clear, specific and precise langu-

age. I do not believe that Section 14 of the Act clearly and specifically indicates a legislative intent that claims on winning lottery tickets are forfeited, if not made within one year from the date of the drawing. Section 14 merely directs the Secretary, after the period of one year (during which he is permitted to hold the funds and make payments to winners), to pay unclaimed prize money into the State Lottery Fund. The State Lottery Fund, according to the statute, must be used, among other things, for the payment of prizes to the holders of winning lottery tickets. It is no more complicated than that.

In summary then, from my point of view, the Legislature has not specifically set forth a statute of limitation or any other time restriction applicable to the holder of a winning State lottery ticket. Consequently, Madara may have a legal claim. Therefore I would overrule the preliminary objections, if necessary permit Madara to amend his complaint, and order an answer filed. Thereafter, if Madara can support his claim at a hearing, he should be paid.

Judges ROGERS and BLATT join in this dissent.