## Wachter v. Erie Insurance Group

*Edward R. Murphy*, for plaintiffs.
*Jackson M. Sigmon*, for defendant.

FRANCIOSA, *J.*, January 17, 1979—On April 12, 1978, plaintiffs, Margaret and Harold Wachter, filed a complaint in assumpsit against defendant, Erie Insurance Group. This matter comes before the court on defendant's preliminary objections to the complaint in the nature of a demurrer.

From the pleadings, we glean the following facts. On February 2, 1976, plaintiff, Margaret Wachter,

was seriously injured as a result of being involved in an automobile accident. In August of 1977, plaintiffs filed suit for damages against several parties involved in the accident, including Daniel Carmen Brady and Donald E. Brady, in the Court of Common Pleas, Northampton County, to No. 261 August Term, 1977. Both plaintiffs and the Bradys are insured by no-fault policies issued by Erie Insurance Group. When the Bradys answered the August, 1977 complaint they disclosed in their new matter that the $18,101.96 paid to plaintiffs for medical expenses incurred for a private hospital room and private duty nurses was not paid by Erie Insurance Group, acting as the insurer of plaintiffs' policy, but rather, the money was paid by Donald E. Brady pursuant to the Act of July 31, 1968, P.L. 936, 12 P.S. §2089.11 et seq.,* which allows for advanced payment prior to trial without admission as to liability. Thereafter, on April 3, 1978, plaintiffs filed the present action under their policy against Erie Insurance Group, acting as plaintiffs' insurer, for failure to make payments for medical expenses incurred in an automobile accident pursuant to the dictates of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq.

Since this is a demurrer, defendant must, for the purposes of the demurrer, admit all well-pleaded, material and relevant facts in the complaint: Madara v. Com., 13 Pa. Commonwealth Ct. 433, 323 A. 2d 401 (1974). In determining whether a demurrer should be sustained the question is whether under the facts averred in the complaint, the law says with certainty that no recovery is possible:

*Repealed and superceded by Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. §6141 (effective June 27, 1978).

King v. U. S. Steel Corp., 432 Pa. 140, 247 A. 2d 563 (1968). "By demurrer a party may contend that even if the averments of the adverse party are true they do not constitute a cause of action or defense." 2 Anderson Pa. Civ. Prac. §1017.152. Thus, where the complaint on its face shows that the claim is devoid of merit, the demurrer should be sustained: Greenberg v. Aetna Insurance Co., 427 Pa. 511, 235 A. 2d 576 (1967). It is the function of this court, in considering the demurrer, to examine the complaint and to consider whether a cause of action is stated which, if proved, would entitle plaintiffs to the relief they seek: Wells v. Pittsburgh Board of Public Education, 31 Pa. Commonwealth Ct. 1, 374 A. 2d 1009 (1977). For the basis of the demurrer defendant presents three separate arguments.

First, defendant argues that plaintiff has failed to allege that the private hospital room and the private duty nurses were "medically required" as provided by section 1009.103. Under section 1009.202 of the act, a no-fault carrier has the obligation to pay basic loss benefits for allowable expense incurred by a victim resulting from injury arising out of the maintenance or use of a motor vehicle. Section 103 of the act defines "allowable expense" as:

"'Allowable expense' means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for: (A) professional medical treatment and care; (B) emergency health services; (C) medical and vocational rehabilitation services; (D) expenses directly related to the funeral, burial, cremation, or other form of disposition of the remains of a deceased victim, not to exceed one thousand five hundred dollars ($1,500); and

"The term does not include that portion of a charge for a room in a hospital, clinic, convalescent, or nursing home, or any other institution engaged in providing nursing care and related services, *in excess of a reasonable and customary charge for semiprivate accommodations, unless more intensive care is medically required;* or any amount includable in work loss, replacement services loss, or survivor's loss." Section 1009.103 (emphasis supplied).

In order to be eligible for the additional coverage concerning a private room accommodation, the plaintiff alleged in his complaint: "7. During said hospitalization wife-plaintiff had private duty nurses and was in a private room under *authorization* from the hospital doctors." (Emphasis supplied.)

Defendant claims that the failure to aver "medically required" instead of "authorization" renders the complaint defective and susceptible to a demurrer. We find this argument to be overly concerned with semantics. As Judge Cardozo once remarked: "(t)he law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (1917). We find that the allegation in paragraph seven of plaintiffs' complaint adequately apprised defendant of the theory plaintiffs would advance at trial. It will be up to plaintiffs at the time of trial to prove that the private accommodations were medically required. We also find, after reading section 103, that private duty nurses are a necessary and incidental part of the definition of private hospital room.

Second, defendant argues that plaintiffs cannot

maintain an action against defendant for failure to pay medical expenses when the medical expenses have already been paid under the policy of Donald E. Brady, the alleged tortfeasor, pursuant to 12 P.S. §2089.11 et seq. Indeed this case presents a unique situation due to the fact that the same carrier insures both plaintiff in a no-fault contract and the tortfeasor under a liability contract.

On the one hand, we are faced with plaintiffs' potential of recovering the $18,101.96 in medical expenses twice, that is, from both policies. Such a result must be clearly guarded against.

On the other hand, however, we are confronted with a greater risk, in that a carrier in this particular position may attempt to manipulate its payments under both policies so as to cancel out the objective of the No-fault Act. Such a result could be accomplished where a carrier, representing both parties, attempts to reduce its exposure to liability by acting as if it had only one contract of liability in the picture, that of the liability policy.

Perhaps a hypothetical example could effectively demonstrate a possible result which this court intends to guard against. Suppose A is involved in an automobile accident with B and both are insured by X. As a result of the accident, A incurs $20,000 worth of medical expenses. But, instead of X paying the medical expenses through A's policy, X chooses to make an advance payment, pursuant to 12 P.S. §2089.11 et seq., by which the $20,000 in medical expenses is paid through B's policy. However, the maximum value of B's coverage under the policy is $25,000 and B, himself, is otherwise judgment proof. Thereafter, A sues B in a tort action and receives a $50,000 verdict against B. Since B has already advanced the payment of $20,000, the only additional money A can receive off of B and

his policy is $5,000, thereby bringing the total amount of recovery to $25,000, the maximum under B's policy. If X, however, had chosen to pay A the $20,000 in medical expenses out of A's policy, as provided by the No-fault Act, then A's total recovery could have been $45,000, representing $20,000 from A's own policy and $25,000 from B's policy. The latter result is much more equitable, and is the result which the No-fault Act was designed to achieve.

We believe the carrier has created its own problem and has chosen to keep its liability under both policies open. As stated by the New Jersey Supreme Court in a not dissimilar situation:

"It is fair and equitable to require a liability carrier to be cognizant of its primary obligation to the injured victim. And if it volunteers payment to the subrogated carrier [here, defendant as plaintiff's insurer] before the resolution of the claim of the injured party, it cannot assert any right to reduce the available coverage for that injury by the amount of payment. It must absorb the loss caused by its folly." Pennsylvania Mfgrs. Ass'n. Ins. Co. v. Government Employees Ins. Co., 136 N.J. 491, 347 A. 2d 5, 9-10 (1975), aff'd, 72 N.J. 348, 370 A. 2d 855 (1977).

It would be very easy for an insurance company to avoid this dilemma by paying no-fault benefits as intended by the No-fault Act and thereby limit its exposure as the liability carrier solely to the benefits exceeding the no-fault coverage, such as pain and suffering. In sum, to throw plaintiffs out of court would be more unfair because it could cause irreparable harm if part of an otherwise allowable claim is in the end not recoverable. For that reason, this second ground is also rejected.

And lastly, defendant argues that plaintiffs have failed to aver when and if a demand for no-fault benefits was made. Although this argument is technically correct in that plaintiffs have not specifically stated that such a demand was made, it is obvious that defendant's preliminary objections are predicated on the ground that payments under the no-fault contract have been withheld at its option. In order to discourage the time consuming and wasteful expense of requiring the plaintiffs to amend the complaint to allege demand, this court, in the name of judicial economy acknowledges that the issue of such nonpayment has genuinely arisen between the parties.

We, therefore, enter the following

## ORDER

And now, January 17, 1979, defendant's preliminary objections in the nature of a demurrer are denied and dismissed.

Defendant shall file an answer to the complaint within 20 days from the date of this order.